**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| SPIRIT OF ALOHA TEMPLE, a Hawaiʻi nonprofit corporation; FREDRICK R. HONIG, *Plaintiffs - Appellants*, v. COUNTY OF MAUI; STATE OF HAWAIʻI, *Defendants - Appellees*, and MAUI PLANNING COMMISSION, *Defendant*. | No. 23-3453 D.C. No. 1:14-cv-00535-SOM-WRP OPINION |
| SPIRIT OF ALOHA TEMPLE, a Hawaiʻi nonprofit corporation; FREDRICK R. HONIG, *Plaintiffs - Appellees*, v. | No. 23-3633 D.C. No. 1:14-cv-00535-SOM-WRP |

COUNTY OF MAUI,

   *Defendant - Appellant.*

SPIRIT OF ALOHA TEMPLE, a Hawaiʻi nonprofit corporation; FREDRICK R. HONIG,

   *Plaintiffs - Appellants*,

 v.

COUNTY OF MAUI,

   *Defendant - Appellee.*

No. 24-2096

D.C. No. 1:14-cv-00535-SOM-WRP

Appeal from the United States District Court
for the District of Hawaii
Susan O. Mollway, District Judge, Presiding

Argued and Submitted October 7, 2024 as to Nos. 23-3453, 23-3633
Submitted October 7, 2024 as to 24-2096[*]
Honolulu, Hawaii

Filed March 28, 2025

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Before:  Mary H. Murguia, Chief Judge, and Susan P. Graber and Salvador Mendoza, Jr., Circuit Judges.

Opinion by Judge Mendoza

## SUMMARY[**]

### Religious Land Use and Institutionalized Persons Act of 2000

The panel affirmed the district court's judgment in favor of the County of Maui in plaintiffs' action alleging that the County's denial of a special use permit substantially burdened their religious exercise in violation of the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA).

Plaintiffs applied for a special use permit for a church and related activities on land, zoned for agriculture, that they purchased on Maui.  The Maui Planning Commission denied plaintiffs' application.  Plaintiffs asserted that the district court erred by instructing the jury to decide whether the government substantially burdened their exercise of religion in violation of RLUIPA.

The County argued that plaintiffs waived any challenge to the substantial-burden jury instruction.  The panel held that the County's waiver argument was itself waived where the County belatedly made the argument in its reply brief.

---

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

In the land-use context, RLUIPA prohibits the government from imposing a "substantial burden" on a person's or religious institution's "religious exercise" unless the burden is the least restrictive means of furthering a compelling government interest. The panel held that RLUIPA's substantial-burden inquiry was a question of law for the court to decide. Thus, it was error for the district court to send this question to the jury. Nevertheless, the error was harmless because the jury's verdict was consistent with the required legal outcome.

The remaining issues on appeal were resolved in a concurrently filed memorandum disposition.

## COUNSEL

Roman P. Storzer (argued) and Robert L. Greene, Storzer & Associates PC, Washington, D.C.; Adam G. Lang, Jonathan S. Durrett, and Clarisse M. Kobashigawa, Durrett Lang Morse LLLP, Honolulu, Hawai'i; for Plaintiffs-Appellants.

Sianha M. Gualano (argued) and Lauren K. Chun, Deputy Attorneys Generals; Anne E. Lopez, Attorney General of Hawai'i; Office of the Hawai'i Attorney General, Honolulu, Hawai'i; Brian A. Bilberry and Thomas W. Kolbe, Deputy Corporation Counsels; Victoria J. Takayesu, Corporation Counsel; County of Maui, Department of the Corporation Counsel, Wailuku, Hawai'i; for Defendants-Appellees.

Meredith H. Kessler and John A. Meiser, Notre Dame Law School, Religious Liberty Clinic, Notre Dame, Indiana, for Amicus Curiae Notre Dame Law School Religious Liberty Clinic.

Lucas W.E. Croslow, Brian P. Morrissey, and Marcus S. Bauer, Sidley Austin LLP, Washington, D.C.; Nicholas R. Reaves, Yale Free Exercise Clinic, Washington, D.C.; for Amicus Curiae Jewish Coalition for Religious Liberty.

---

### **OPINION**

MENDOZA, Circuit Judge:

Judge or jury. We often grapple with who gets to decide. The judge has authority over questions of law, while factual disputes are reserved for the jury. At times, the distinction between the two can be elusive. But we must not shy away from drawing the distinction when necessary. Ultimately, where we draw the line "varies according to the nature of the substantive law at issue." *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 501 n.17 (1984).

Today, we must engage in line drawing once again. We are faced with an issue of first impression in our circuit: whether the "substantial burden" inquiry under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc, *et seq.*, is a question of law and thus for the court to decide, or a question of fact, properly left for the jury. Because the substantial burden inquiry involves defining the bounds of a legal principle, we conclude that it is a question of law and, therefore, that the district court erred in submitting this question to the jury. But because the error was harmless, and Plaintiffs' religious exercise was not substantially burdened as a matter of law, we affirm.

## I. BACKGROUND[1]

### A. Special Permit Applications

This saga began more than thirty years ago, when Plaintiff Fredrick R. Honig purchased eleven acres of land at 800 Haumana Road in Maui, Hawaiʻi. The land is zoned for agricultural use, and a portion of the property is in a state conservation district subject to environmental protections. After purchasing the property, Honig did not waste any time. Without bothering to apply for the necessary permits, Honig began to build on the property, clearing trees, constructing structures, digging a well, and installing cesspools. Through Honig's nonprofit, Well Being International, he began using the property for weddings, vacation rentals, yoga classes, retreats, and other events. During this time, Honig applied for a variety of trade names—including "Maui Gay Weddings," "A Marriage Made in Heaven," and "Maui Wedding Planners"—that he used specifically for "wedding planning and services." Honig described Well Being International as "a spiritual nonprofit organization."

In 2007, Honig formed a separate nonprofit: Spirit of Aloha Temple. The following month, thirteen years after Honig purchased the land, he and Spirit of Aloha Temple ("Plaintiffs") applied to the Maui Planning Commission ("Commission") for a special use permit to allow a "[c]hurch, church operated bed and breakfast establishment, weddings, special events, day seminars, and helicopter landing pad." The application was later amended to add

---

[1] This summary of the facts draws heavily from our opinion in the prior appeal, *Spirit of Aloha Temple v. County of Maui*, 49 F.4th 1180 (9th Cir. 2022).

additional activities, such as "weekly service[s], classes, special events, day programs and weddings."

Hawai'i's zoning laws permit county planning commissions to grant special use permits for "certain unusual and reasonable uses" on agricultural land. Haw. Rev. Stat. § 205-6(a). Hawai'i Administrative Rules section 15-15-95(c) sets out five guidelines that a planning commission considers when evaluating a special use permit application:

> (1) The use shall not be contrary to the objectives sought to be accomplished by chapters 205 and 205A, HRS, and the rules of the commission;
>
> (2) The proposed use would not adversely affect surrounding property;
>
> (3) The proposed use would not unreasonably burden public agencies to provide roads and streets, sewers, water drainage and school improvements, and police and fire protection;
>
> (4) Unusual conditions, trends, and needs have arisen since the district boundaries and rules were established; and
>
> (5) The land upon which the proposed use is sought is unsuited for the uses permitted within the district.

HAR § 15-15-95(c).

The Commission denied Plaintiffs' application, noting a host of problems. Several structures on the property did not

have building permits; the proposed uses did not comply with several environmental and cultural goals of the Paia-Haiku Community Plan; the land possibly contained unknown burial sites; the increased traffic on the narrow and winding Haumana Road would pose safety concerns; and the proposed uses would adversely affect surrounding property.

Still, Plaintiffs were undeterred and continued to use the land for non-agricultural purposes without the appropriate permits.  As a result, the County fined Plaintiffs for conducting "commercial weddings" and "transient vacation rentals/short term rentals," and Plaintiffs agreed to pay the fines and stop this prohibited activity.

In the ensuing years, Plaintiffs worked with various agencies to address the Commission's concerns and eventually obtained the necessary building permits.  In 2012, Plaintiffs filed their second application, again seeking to conduct "church activities" on the land.  The Maui Planning Department recommended that the Commission approve the second application subject to twenty-one conditions, including limiting the number and size of events held on the property, requiring the use of a shuttle, and working with the Fire Department to install a driveway that emergency vehicles could access.

The Commission voted to deny the second application. Honig requested reconsideration of the denial, and the Commission rescinded the denial and conducted a hearing. Following a hearing, the Commission again denied the second application, concluding that the proposed uses "would adversely affect the surrounding properties, in conflict with [HAR § 15-15-95(c)(2)]," and "would increase traffic and burden public agencies providing roads and

streets, police, and fire protection, in conflict with [HAR § 15-15-95(c)(3)]."

## B. First Trial

Following the denial of the second special-permit application, Plaintiffs sued the County of Maui and the Commission, alleging violations of RLUIPA's substantial burden, nondiscrimination, and equal terms provisions; the First Amendment's prohibition on prior restraints; the Free Exercise and Equal Protection clauses under the United States Constitution and Hawaiʻi State Constitution; and the Hawaiʻi Administrative Procedure Act ("APA").

The district court declined to exercise supplemental jurisdiction over the Hawaiʻi APA claim and stayed the remaining claims pending the adjudication of that claim in state court. The state court ultimately affirmed the Commission's decision under the Hawaiʻi APA, concluding that "the Commission's decision does not appear to be arbitrary, capricious, or an abuse of discretion."

The district court then lifted the stay and considered Plaintiffs' remaining claims. The State of Hawaiʻi intervened, and the district court granted the State summary judgment with respect to the First Amendment prior-restraint claim. In a separate order, the district court granted summary judgment to the County on the remaining claims that required strict scrutiny, concluding that collateral estoppel barred relitigating the Commission's finding that the permit denial was the least restrictive means of furthering a compelling governmental interest. Because RLUIPA's equal-terms claim does not require the application of strict scrutiny, *see* 42 U.S.C. § 2000cc(b)(1), that was the only claim to survive summary judgment.

The RLUIPA equal-terms claim proceeded to trial, and an advisory jury found that neither side proved by a preponderance of the evidence whether Spirit of Aloha Temple is or is not a religious assembly or institution. The jury also found that the County did not treat Spirit of Aloha Temple "on less than equal terms as compared to the way the County of Maui treated a similarly situated nonreligious assembly or institution." Accordingly, the district court entered judgment for the County. Plaintiffs did not appeal that judgment.

### C.  First Appeal

Plaintiffs appealed the district court's summary judgment on the First Amendment prior-restraint claims and the claims barred by collateral estoppel. *See Spirit of Aloha Temple v. County of Maui*, 49 F.4th 1180 (9th Cir. 2022). We reversed the district court's grant of summary judgment, concluding that Plaintiffs brought a successful facial First Amendment challenge to the County's zoning scheme. *Id.* at 1192–93. Specifically, we held that HAR § 15-15-95(c)(2) was an unconstitutional prior restraint and "left for the district court whether § 15-15-95(c)(2) is severable." *Id.* at 1191, 1192 n.5. We further held that the district court erred in concluding that "the Commission's findings on strict scrutiny collaterally estop Plaintiffs' substantial-burden and nondiscrimination RLUIPA claims, Free Exercise claims, and Equal Protection claims." *Id.* at 1193. We determined that the Commission's findings do not preclude consideration of whether denial of the second permit application was the least restrictive means of furthering a compelling interest. *Id.* We sent those claims back for the district court to consider.

### D. Second Trial

On remand, the district court concluded that HAR section 15-15-95(c)(2) is severable from the remainder of the provision and, therefore, entered judgment to the State on the prior restraint claim (Count V). The district court then considered the remaining claims: Count I (RLUIPA substantial burden); Count II (RLUIPA nondiscrimination); Count VI (First Amendment Free Exercise); Count VII (Fourteenth Amendment Equal Protection); Count VIII (Hawai'i State Free Exercise Clause); and Count IX (Hawai'i State Equal Protection Clause). All six claims proceeded to trial, and the jury found for the County on all counts.

In this second appeal, Plaintiffs assert that the district court erred by instructing the jury to decide whether the government substantially burdened Plaintiffs' exercise of religion, in violation of RLUIPA.[2] Plaintiffs argue that the substantial-burden inquiry is a question of law.

### II. ANALYSIS

We have jurisdiction under 28 U.S.C. § 1291. We review misstatements of the law de novo and errors in the formulation of a jury instruction for abuse of discretion. *Hunter v. County of Sacramento*, 652 F.3d 1225, 1232 (9th Cir. 2011). An instructional error warrants reversal if the error is not harmless. *Gantt v. City of Los Angeles*, 717 F.3d 702, 707 (9th Cir. 2013).

---

[2] The remaining issues on appeal are resolved in the concurrently filed memorandum disposition.

### A. Waiver

The County argues that Plaintiffs waived any challenge to the substantial-burden jury instruction. "Waiver of a jury instruction occurs when a party considers the controlling law, or omitted element, and, in spite of being aware of the applicable law, proposed or accepted a flawed instruction." *United States v. Kaplan*, 836 F.3d 1199, 1217 (9th Cir. 2016) (internal quotation marks and citation omitted). In such cases, any alleged error is unreviewable. *Id.*; *see United States v. Perez*, 116 F.3d 840, 845 (9th Cir. 1997) (en banc) ("If [a party] has both invited the error, and relinquished a known right, then the error is waived and therefore unreviewable.").

The County asserts that Plaintiffs "expressly consented" to sending the substantial-burden issue to the jury. But, curiously, neither Plaintiffs nor the County mentioned this agreement in their initial briefing. Instead, the County belatedly made the argument in its reply. Thus, "its waiver argument is itself waived." *Gallardo v. United States*, 755 F.3d 860, 865 (9th Cir. 2014); *see id.* ("Because the government failed to argue waiver in its answering brief, its waiver argument is itself waived.").

### B. RLUIPA's Substantial-Burden Inquiry

Plaintiffs challenge the district court's jury instruction related to the RLUIPA substantial-burden claim.[3] After listing a variety of factors for the jury to consider, the district court instructed the jury to determine whether Plaintiffs

---

[3] Although the jury instruction at issue applied to both the RLUIPA substantial-burden claim and the First Amendment claims, Plaintiffs limit their argument to the "substantial burden claim." Therefore, we limit our analysis to RLUIPA.

"prove[d] by a preponderance of the evidence that the denial of their Special Use Permit application substantially burdened their religious exercise." The jury found that the County had not substantially burdened Plaintiffs' exercise of religion. Plaintiffs argue that the issue of whether their religious exercise was "substantially burdened" is a legal determination, and it was error for the district court to submit that issue to the jury.

Congress enacted RLUIPA after the Supreme Court invalidated the Religious Freedom Restoration Act ("RFRA") as it applied to the States, in *City of Boerne v. Flores*, 521 U.S. 507 (1997). RFRA provided broad protections and prohibited the government from "substantially burden[ing]" a person's religious exercise "even if the burden result[ed] from a rule of general applicability unless the government [could] demonstrate the burden '(1) [wa]s in furtherance of a compelling governmental interest; and (2) [wa]s the least restrictive means of furthering that compelling governmental interest.'" *Id.* at 515–16 (first alteration in original) (quoting 42 U.S.C. § 2000bb-1). In *City of Boerne*, the Supreme Court held that, as applied to the States and their subdivisions, RFRA was "an unconstitutional exercise of congressional power pursuant to Section Five of the Fourteenth Amendment" because it "lack[ed] . . . proportionality or congruence between the means adopted and the legitimate end to be achieved." *Guru Nanak Sikh Soc. of Yuba City v. County of Sutter*, 456 F.3d 978, 985 (9th Cir. 2006) (internal quotation marks and citation omitted).

RLUIPA "replaces the void provisions of RFRA," *Wyatt v. Terhune*, 315 F.3d 1108, 1112 (9th Cir. 2003), *overruled on other grounds by Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014), and applies only to regulations involving land use or

prison conditions, *Guru Nanak*, 456 F.3d at 986; *see* 42 U.S.C. § 2000cc–1.  In the land-use context, RLUIPA prohibits the government from imposing a "substantial burden" on a person's or religious institution's "religious exercise" unless the burden is the least restrictive means of furthering a compelling governmental interest.  42 U.S.C. § 2000cc(a)(1).

It remains an open question in our circuit whether RLUIPA's substantial-burden inquiry is a question of law. At least three circuits have weighed in on this issue.  In *Roman Catholic Bishop of Springfield v. City of Springfield*, the First Circuit cited two reasons for concluding that the substantial-burden inquiry is a legal question.  724 F.3d 78, 93 (1st Cir. 2013).  First, "the corollary question of whether the government's interest is compelling is generally treated as a question of law."  *Id.*  Second, appellate courts are required to "conduct an independent review of the evidence" when considering challenges under the First Amendment Free Speech Clause "in order to safeguard precious First Amendment liberties."  *Id.* at 93–94 (internal quotation marks and citation omitted).  And RLUIPA claims "are corollaries of First Amendment Free Exercise claims."  *Id.* at 94.  The Sixth Circuit came to the same conclusion, relying on the reasoning of *Roman Catholic Bishop of Springfield.  See Livingston Christian Schs. v. Genoa Charter Twp.*, 858 F.3d 996, 1001 (6th Cir. 2017).  And finally, the Seventh Circuit has addressed the issue, although not conclusively.  The Seventh Circuit "assum[ed]" without deciding that the determination is a question of fact while noting, at the time, that the Court could not "find a reported opinion that addresses the question."  *World Outreach Conf. Ctr. v. City of Chicago*, 591 F.3d 531, 539 (7th Cir. 2009).

We are persuaded by the reasons cited by the First and Sixth Circuits. Of course, RLUIPA's substantial-burden inquiry often involves factual considerations, *see New Harvest Christian Fellowship v. City of Salinas*, 29 F.4th 596, 602 (9th Cir. 2022) (explaining that "our approach to determining the presence or absence of a substantial burden is to look to the totality of the circumstances"), and material disputes of fact can be resolved appropriately by a jury, *see Morales v. Fry*, 873 F.3d 817, 826 (9th Cir. 2017) (explaining that disputed material facts can be submitted to the jury though special interrogatories but the ultimate legal question of whether a right is clearly established is "a question reserved for the court"). But because the ultimate question of whether a land use regulation substantially burdens an individual's or entity's religious exercise involves weighing many factors, considering legal concepts, and "exercis[ing] judgment about the values that animate legal principles," *United States v. McConney*, 728 F.2d 1195, 1202 (9th Cir. 1984) (en banc), *abrogated in part on other grounds as recognized by Est. of Merchant v. Comm'r*, 947 F.2d 1390, 1392–93 (9th Cir. 1991), the inquiry is best suited for the court, rather than the jury. This is especially true given that we are "[i]n the constitutional realm" and "marking out the limits of [a] standard." *U.S. Bank Nat. Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 583 U.S. 387, 396 n.4 (2018) (alteration in original) (internal quotation marks and citation omitted).

We therefore join the First and Sixth Circuits and conclude that whether a land use regulation imposes a substantial burden on a party's exercise of religion under RLUIPA is a question of law for the court to decide. Thus, it was error for the district court to send this question to the jury.

### C. Substantial Burden

The district court's error in sending the substantial-burden issue to the jury is harmless "if the jury's verdict is consistent with the required legal outcome." *Ohio House, LLC v. City of Costa Mesa*, 122 F.4th 1097, 1116 (9th Cir. 2024); *see also Minneapolis & Saint Louis Ry. Co. v. Columbus Rolling-Mill Co.*, 119 U.S. 149, 152 (1886) ("The submission of a question of law to the jury is no ground of exception, if they decide it aright."). Therefore, we must consider whether the County's denial of Plaintiffs' special use permit substantially burdened their religious exercise as a matter of law.

RLUIPA applies "if the challenged government action involves 'individualized assessments of the proposed uses for the property involved.'" *New Harvest*, 29 F.4th at 601 (quoting 42 U.S.C. § 2000cc(a)(2)(C)). As an initial matter, neither party disputes that the County's zoning scheme involves an individualized assessment and, thus, that RLUIPA governs the County's actions in this case.

To establish a RLUIPA violation, Plaintiffs have the burden of demonstrating that the challenged government practice substantially burdens their exercise of religion. 42 U.S.C. § 2000cc-2(b). A land use regulation imposes a substantial burden when it is "oppressive to a significantly great extent. That is, a substantial burden on religious exercise must impose a significantly great restriction or onus upon such exercise." *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004) (internal quotation marks and citation omitted). We consider "the totality of the circumstances," including, but not limited to, whether the County's reasons for denying the special use permit were arbitrary and could apply to Plaintiffs' future

(17 of 20), Case: 23-3452, 03/28/2025, DktEntry: 81.1, Page 17 of 20

SPIRIT OF ALOHA TEMPLE V. COUNTY OF MAUI 17

applications; whether Plaintiffs have ready alternatives or whether those alternatives would require "substantial uncertainty delay, or expense"; whether Plaintiffs were precluded from other locations in the county; and whether Plaintiffs imposed the burden upon themselves. *New Harvest*, 29 F.4th at 602. Looking at the totality of the circumstances, we conclude as a matter of law that the County did not impose a substantial burden on Plaintiffs.

Under Hawaiʻi law, agricultural land is limited to certain uses listed in Hawaiʻi Revised Statutes section 205-4.5. For uses that fall outside that list, section 205-6 allows the county planning commission to grant special use permits for "certain unusual and reasonable uses." Haw. Rev. Stat. § 205-6(a). The planning commission considers several guidelines when evaluating an application for a special use permit, such as whether the use is "contrary to the objectives sought to be accomplished by chapters 205 and 205A, HRS, and the rules of the commission" and whether "[t]he proposed use would not unreasonably burden public agencies to provide roads and streets, sewers, water drainage and school improvements, and police and fire protection." HAR §§ 15-15-95(c)(1), (3). When the Commission denied Plaintiffs' second special-use-permit application, it noted that the proposed uses would increase traffic and burden public agencies. The Commission also noted safety concerns for drivers and pedestrians on Haumana Road.

Haumana Road is a narrow road, between eleven and eighteen feet wide at different parts. In contrast, the average rural or agricultural road is about twenty-two feet wide. Haumana Road contains no streetlights, no sidewalks, no shoulder, and no lane markings. And in certain places, two cars cannot pass each other unless one pulls off the road.

The Commission found compelling the testimony of several nearby property owners on Haumana Road, who expressed concerns about pedestrian safety. Residents testified that children regularly walk home from school on the road and that the road has several blind turns, which pose a safety issue. Other residents noted concerns about flooding on the road during storms that made the road difficult to pass, although Plaintiffs challenge the severity and frequency of such flooding.

Given the conditions of Haumana Road, the County's concerns about traffic and road safety are well supported in the record and are not arbitrary. *New Harvest*, 29 F.4th at 602. Moreover, the County's reasons for denying the permit have been consistent, and the County has not exhibited "conflicting rationalizations for repeated denials." *Id.* at 603.

It is also undisputed that Plaintiffs were not "precluded from using other sites in the [County]." *Id.* Plaintiffs did not attempt to relocate, nor is there evidence that Plaintiffs even considered other locations, despite being aware of the zoning restrictions and the remoteness of the land. In fact, Honig testified that, when he bought the land in 1994, he was looking specifically for agricultural land. After acquiring the land, he began building immediately, without the required permits. For years, Plaintiffs continued to use the property without complying with the permitting requirements.

Plaintiffs' conduct starkly contrasts that of the religious organization in *Guru Nanak*, where we found a substantial burden on the organization's religious exercise. 456 F.3d at 989–90. In that case, the religious organization, Guru Nanak, first tried to establish a temple in a residential

district. *Id.* at 989. When its application was denied, the county indicated that a reason for the denial was that the potential noise and traffic would bother other residents. *Id.* Guru Nanak was therefore discouraged from "locat[ing] its temple in higher density districts." *Id.* The organization then proposed a smaller temple in an agricultural area but was still denied. *Id.* at 990. This time, the county stated "that the temple would contribute to 'leapfrog development,'" a line of reasoning that could effectively be used to deny all churches from accessing the land. *Id.* The county's denials in that case thus significantly narrowed "the large amount of land theoretically available to Guru Nanak under the Zoning Code to several scattered parcels" and made it uncertain whether the county would approve its application even if it relocated again. *Id.* at 992.

Unlike Guru Nanak, Plaintiffs have not considered other sites in the County. Instead, without a permit, Honig immediately began developing the land after he purchased it. Plaintiffs' "wholesale failure of proof concerning available alternatives is more significant because [they] purchased [land] that [they] knew at the time was subject to unique zoning restrictions," which would limit their ability to establish a church or host large groups for religious activities. *New Harvest*, 29 F.4th at 604. Moreover, the County's reasons for denying Plaintiffs' special-use permits have been consistent and relate to safety concerns that are not arbitrary and have not "lessened the possibility that [Plaintiffs] could find a suitable property" elsewhere. *Guru Nanak*, 456 F.3d at 992. Because the County's actions have not been significantly oppressive, were not arbitrary, and have not "lessened the prospect of [Plaintiffs] being able to construct a [church] in the future," *id.*, the County has not

imposed a substantial burden on Plaintiffs' religious exercise.

## III. Conclusion

Juries serve an indispensable fact-finding function that is critical to our system of justice. But when certain factual determinations enter "the realm of a legal rule," particularly when constitutional liberties are involved, the judge rather than the jury is better suited to exercise its judgment. *Bose Corp.*, 466 U.S. at 501 n.17. Because the substantial-burden inquiry involves defining the contours of a legal principle and implicates a constitutional right, we conclude that it is a question of law for the court to decide. Despite the district court's error in sending the RLUIPA substantial-burden question to the jury, we conclude that "the jury's verdict is consistent with the required legal outcome," *Ohio House*, 122 F.4th at 1116, and therefore **AFFIRM** the judgment.